UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                         )
YRIS MILAGROS TRANCOSO OBIJO,   )
                                         )

          Plaintiff,            )
                                         )

             v.             )       Civil Action No. 11-10472-JLT
                                         )
MICHAEL ASTRUE,               )
Commissioner of Social Security,     )
                                         )
         Defendant.        )
_____)

## REPORT AND RECOMMENDATION

[Docket Nos. 18, 23]

May 7, 2012

Boal, M.J.

      This action seeks judicial review of a final decision by the Commissioner of the Social

Security Administration ("Commissioner") regarding an individual's entitlement to Social

Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Yris Milagros Trancoso Obijo ("Obijo") asserts

that the Commissioner's decision denying her such benefits – memorialized in a September 24,

2010 decision of an administrative law judge ("ALJ") – is in error, Docket No. 18, and the

Commissioner, in turn, has moved to affirm, Docket No. 23.[1] This Court heard oral argument on

the motions on May 2, 2012. For the reasons contained herein, I recommend that the District

---

[1] On September 14, 2011, the District Court referred the motions to this Court for a
report and recommendation. Docket No. 12.

Court affirm the Commissioner's decision.

## I.  STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence.  See 42 U.S.C. §§ 405(g) and 1383(c)(3).  Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion.  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  The Supreme Court has defined substantial evidence as "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts.  Rodriguez, 647 F.2d at 222; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987).  A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II.  FACTS AND PROCEDURAL HISTORY

### A.  Procedural History

Obijo filed an application for SSDI and SSI on July 24, 2008, alleging an inability to

work since November 3, 2007. (Administrative Record ("AR") 7, 115-122, 123-127, Docket No. 14). Obijo's application was denied initially and on reconsideration. (AR 45-48). Obijo subsequently requested a hearing before an ALJ. (AR 69-70). After hearing and consideration of the testimony of Obijo, who was represented by an attorney, and a vocational expert ("VE"), the ALJ decided, on September 24, 2010, that Obijo was not disabled. (AR 7-18). The Decision Review Board selected Obijo's claim for review, but did not complete its review during the time allowed. (AR 4). Accordingly, the ALJ's September 24, 2010, decision became the final decision of the Commissioner subject to judicial review. (AR 1-3). Obijo filed this action on March 18, 2011. (Docket No. 1).

B.      Background

Obijo was forty-five at the time of the ALJ's decision. (See AR 16). She completed her education through the twelfth grade in the Dominican Republic. Id. Obijo has past work experience as a manager at a check cashing store and as a packer at a curtain factory. (AR 25-26).

C.      The Medical Evidence

Obijo reported that she injured her back while working in November 2007. (AR 144). She appears to have begun treatment for her back injury in January 2008, when she went to Atreva Health Care ("Atreva") and participated in physical therapy. (AR 250- 251). Obijo received treatment at Atreva on a regular basis and complained of ongoing back pain. (AR 252-261). By July 2008, she reported some improvement, but noted that her back pain remained "bothersome." (AR 262). At the time, she also began complaining of depression and anxiety due to her husband's recent death. Id.

3

Also in July 2008, Obijo began treatment at Future Health Institute ("FHI"). (AR 211, 218-224). She complained of mid and low back pain. (AR 219). Examinations revealed muscle tension and sensory loss. (AR 227, 231). On July 28, 2008, a form was completed indicating that Obijo had a "temporary total disability" from July 28, 2008 to August 11, 2008. (AR 233). It is unclear who completed the form, and it identified no specific functional limitations. Id. Obijo continued to get treatment at FHI and, in the course of her treatment, largely reported no improvement of her back condition. (AR 214-217). She last appears to have received treatment there in November 2008, when she complained of increased pain. (AR 213).

Also in November 2008, Rosemary Byrne, a nurse practitioner at Atreva, indicated that Obijo was totally disabled and that her ability to sit, bend and climb was limited as a result of back pain. (AR 325). Nurse Byrne stated that Obijo should not lift more than five pounds. Id.

In January 2009, Dr. Swaran Goswami, a state agency physician, reviewed Obijo's records and found that she could only occasionally engage in postural activities and needed to avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, poor ventilation, and other hazards. (AR 270-277).

In April 2009, Obijo met with Dr. Peter Anas for an examination of her back condition. (AR 321-323). Dr. Anas conducted a physical examination and reviewed some of Obijo's past medical records and MRI results. (AR 321). He diagnosed her with degenerative disc disorder and chronic lower back pain. Id. He agreed with previous examiners that Obijo's subjective complaints were "far greater" than physical findings. Id.

In May 2009, Obijo met with Dr. Harry Senger for a consultative examination regarding her alleged depression and anxiety. (AR 280-283). During the exam, Obijo reported limited

activities of daily living. (AR 281). Dr. Senger noted that Obijo's alleged depression met the criteria for dysthymic disorder, but not major depressive disorder. (AR 280). Obijo reported that she had seen a counselor every couple of weeks and had taken 10 mg of Paroxetine for the past month or two. (AR 281). Obijo was diagnosed with adjustment disorder with mixed emotional features and assigned a Global Assessment of Functioning ("GAF")[2] score of 52. Id.

In June 2009, Dr. Carol McKenna, a state agency psychologist, reviewed Obijo's records and completed a functional capacity assessment. (AR 300). In that assessment, she concluded that Obijo was capable of comprehending and recalling simple information, sustaining attention to complete simple tasks for two-hour increments, interacting appropriately with others, and adapting to routine changes. Id.

In August 2009, Obijo met with Dr. Felix Mayers for a consultative examination. (AR 302-305). She complained of continued back and leg pain. (AR 302). She took Ibuprofen, 800 mg, Hydrocodone, and Paroxetine. (AR 303). Upon exam, Obijo exhibited normal strength and range of motion of her upper extremities, but "less than full" strength in her lower extremities and less than full range of motion of her spine and straight leg raising. (AR 304).

Approximately a week later, Dr. John Manuelian, a state agency physician, reviewed Obijo's records and found that she could only occasionally lift or carry ten pounds, frequently

---

[2] "The GAF Scale is used for reporting a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning and, unless otherwise noted, refers to the level of functioning at the time of evaluation." Monts v. Astrue, No. 10-30189, 2011 U.S. Dist. LEXIS 63444, at *5 n.3 (D. Mass. June 15, 2011) (citing American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-33 (4th ed., text rev. 2000)). GAF scores in the 51-60 range indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

carry less than ten pounds, sit for about six hours in a workday, and push and/or pull on a limited

basis in the lower extremities. (AR 308). She could only occasionally engage in postural

activities, never climb ladders, ropes or scaffolds, and needed to avoid concentrated exposure to

hazards. (AR 309, 311).

In April 2010, Obijo met with Dr. Arturo Diaz concerning her musculoskeletal pain. (AR

315-318). She complained of generalized pain, as well as back and left wrist pain. (AR 315-

316). Upon exam, she exhibited generalized tenderness, but normal range of motion of all joints,

and straight leg raise test was negative bilaterally. (AR 316). Obijo's diagnosis included

fibromyalgia, back pain and bilateral carpal tunnel. (AR 317). She was advised to pursue

psychiatric treatment and physical therapy to address her fibromyalgia, and her carpal tunnel

symptoms were described as "mild." Id.

## III.    DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an insured

status and, prior to its expiration, is disabled. See 42 U.S.C. § 423(a)(1)(A) and (E). Entitlement

to SSI, on the other hand, requires a showing of both disability and financial need. See 42

U.S.C. § 1381a. Obijo's need, for purposes of SSI, and her insured status, for purposes of SSDI,

are not challenged.

### A.    Disability Standard And The ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3)(A) (similar). An

individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See generally Bowen v. Yuckert, 482 U.S. 137,

146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the

First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

> . . . .

> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so he is disabled; if not he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

At step one, the ALJ found that Obijo had not engaged in substantial gainful activity

since the alleged onset date of November 3, 2007. (AR 9). At step two, the ALJ found that

Obijo suffered the severe impairments of lumbar degenerative disc disease, fibromyalgia,

obesity, mixed adjustment disorder, depressive disorder and anxiety disorder.[3]  Id.  At step three, the ALJ held Obijo's impairments did not meet or medically equal any on the Listing of Impairments.  (AR 10).  In assessing residual functional capacity, the ALJ found that Obijo had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she is limited to standing for slightly less than two hours in an eight hour workday, is limited to occasional pushing and pulling with the lower extremities, and is limited to occasional balancing, stooping, kneeling, crawling, and climbing. (AR 12).  He further found that she must avoid climbing ropes, ladders and scaffolds, and concentrated exposure to hazards, but can understand, remember, and carry out simple instructions and maintain attention and concentration on simple tasks for two hour periods in an eight hour workday.  Id.  At step four, the ALJ found that Obijo was not able to perform her past relevant work as a manager of a check cashing store and packer at a curtain factory.  (AR 15). At step five, the ALJ found that based on Obijo's age, education, work experience and residual functional capacity ("RFC"), she could perform a significant number of jobs in the national economy.  (AR 16-17).   Accordingly, the ALJ found that Obijo was not disabled.  (AR 17).

B.      Obijo's Challenge To The ALJ's Decision

Obijo argues that: (1) the ALJ did not properly evaluate the limitations caused by her subjective contentions of pain and depression and the ALJ's credibility finding is not supported by the evidence; and (2) the ALJ improperly disregarded certain of the vocational expert's

---

[3]  The ALJ found the following conditions, on which Obijo claimed disability, to be non-severe: hypertension, anemia, asthma, insomnia, and carpal tunnel syndrome.  (AR 10).  Obijo has not challenged this finding.  Nevertheless, her counsel, at oral argument, asserted that these conditions should be considered in combination with her other allegations.

findings.  Pl.'s Br., p. 7-9.

1.      Credibility Determination

Obijo argues that the ALJ erred because he failed "to evaluate the limitations caused by her subjective complaints of pain and depression." Pl.'s Br., p. 7.  Specifically, she argues that the ALJ failed to consider how her symptoms effect her daily activities and failed to address the location, duration, frequency, and intensity of Obijo's claims and symptoms.  Id. at 8.  Obijo therefore asserts that the ALJ's credibility finding is not supported by substantial evidence.  Id. at 9.  This Court disagrees.

In evaluating a claimant's symptoms, including pain, the ALJ must follow a two-step process: first, he must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and, if there is, then the ALJ must evaluate the intensity and persistence of the claimant's symptoms so that he can determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(b), (c)(1).  In this case, the ALJ found that Obijo's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but did not find Obijo's subjective claims of pain credible to the extent that they were inconsistent with his RFC. (AR 13).

An ALJ's credibility determination is entitled to deference, especially when supported by specific findings.  Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  If an ALJ determines that a claimant's testimony regarding her pain is not credible, he "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]."  Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st

Cir. 1986); see also Larlee v. Astrue, 694 F. Supp. 2d 80, 85 (D. Mass. 2010). The determination or decision must "be sufficiently specific to make clear to the individual and to the subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p. Further, "[t]he reasons for the credibility finding must be grounded in evidence and articulated in the determination or decision." Id. Statements such as "the individual's allegations have been considered" or that "the allegations are (or are not) credible" are not sufficient. Id.

An ALJ cannot reject a claimant's statements about the intensity and persistence of pain or about the effect those symptoms have on her ability to do work solely because the objective medical evidence does not substantiate her statements. 20 C.F.R. § 404.1529(c)(2); SSR 96-7p. The absence of objective medical evidence supporting a claimant's statements of pain is only one factor that the ALJ must consider, and he must consider the statements in the context of all evidence. SSR 96-7p. In other words, "[t]he lack of objective medical evidence supporting a claimant's statements about her symptoms is what triggers an ALJ's obligation to conduct a credibility assessment, not evidence that the claimant's statements lack credibility." Clavette v. Astrue, No. 10-580, 2012 U.S. Dist. LEXIS 17251, * 23 (D.N.H. February 7, 2012).

In determining a claimant's RFC, an ALJ is not required to take a claimant's subjective allegations of pain and functional limitations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living. See Frustaglia, 829 F.2d at 194-95; Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 22-23 (1st Cir. 1986); Winn v. Heckler, 762 F.2d 180, 181 (1st Cir. 1985); 20 C.F.R. § 404.1529; SSR 96-7p, 1996 SSR LEXIS 4. In making his determination, an ALJ must consider the so-called

"Avery factors," which are the claimant's daily activities, functional restrictions, non-medical treatment, medications and side-effects, precipitating and aggravating factors, and the nature, location, onset, duration, frequency, radiation, and intensity of the pain.  Avery, 797 F.3d at 29; 20 C.F.R. § 404.1529(c)(3).  An ALJ is not required to discuss each of the Avery factors in order to sufficiently support a credibility determination.  See, e.g., Foley v. Astrue, No. 09-10864, 2010 U.S. Dist. LEXIS 60174, * 21 (D. Mass. June 17, 2010).

In this case, the ALJ complied with Avery.  In his decision the ALJ noted that Obijo reported having difficulty performing daily activities.  (AR 11, 13).  He considered Obijo's report during a consultative examination that she was able to shower, dress, feed herself, drive to her therapist and the store, and perform light chores except for doing laundry and making her bed.  (AR 11, 15).  He noted that she spends significant portions of the day in bed and rarely engages in social activities outside the home, but that she was reported to interact appropriately with treating and examining sources.  (AR 11, 13).  The ALJ also expressly considered Obijo's allegations of "chronic pain, difficulty walking bending, sitting or standing for extended periods."  (AR 13).  He also heard testimony at the hearing that Obijo's medication did not alleviate her symptoms.  (AR 35).

The ALJ also made specific findings as to the relevant evidence when deciding to disbelieve Obijo.  Regarding Obijo's back pain and obesity, the ALJ cited an examining source that stated in 2009 that Obijo no longer used an assistive device and could walk with a smooth steady gait.  (AR 14).  He also noted that Obijo had stated that she could walk up to one block at a time.  Id.  In addition, he stated that an examining physician, Dr. Anas, agreed with prior examining doctors that Ojibo's subjective complaints were greater than the physical findings.

Id.  Regarding Obijo's fibromyalgia, the ALJ found that there was no medical record that Obijo was receiving treatment for her fibromyalgia, that she did not receive the prescribed physical therapy, and that Obijo's failure to pursue additional treatment and follow up care diminished her credibility regarding her subjective pain and symptoms.  Id.  Regarding Obijo's carpal tunnel syndrome, the ALJ stated that examinations indicated a normal range of motion and that the record did not indicate that Obijo's condition has progressed in severity and symptoms.  Id. Finally, the ALJ noted that no treating physician identified any greater limitation than what he found in his RFC.  (AR 13-14).

Regarding her depression and anxiety, the ALJ reported that Obijo took prescription medication for her condition but that there were no records of her receiving treatment from a dedicated mental health source.  (AR 15).  He noted that Obijo had stated in an examination that she would not have difficulty following instructions in the workplace.  Id.  He also cited Obijo's statement that she was able to shower, dress, and feed herself as well as travel to the store alone. Id.  Finally, the ALJ noted that no treating physician identified any greater limitation than what he found in his RFC.  (AR 15).

As demonstrated above, the ALJ appropriately considered the Avery factors and his credibility finding was supported by substantial evidence.

2.      Vocational Expert

Obijo argues that the ALJ ignored the VE's findings that Obijo would be precluded from work if she needed unscheduled breaks over an eight hour day, that could total two or more hours, and absences of three to four days per month.  Pl.'s Br. 9.  As detailed below, the ALJ did not err in his determination.

"It is appropriate for the ALJ to rely on the testimony of a vocational expert to provide the necessary evidence to link a claimant's residual skills with the requirements of various jobs in the national economy." Lema v. Astrue, No. 09-11858, 2011 WL 1155195, at * 6 (D. Mass. Mar. 21, 2011) (quotations omitted). "[F]or a vocational expert's answer to a hypothetical to be relevant, 'the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.'" Rossi v. Shalala, 66 F.3d 306, 1995 WL 568492, at *3 (1st Cir. 1995) (table decision) (quoting Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)). "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." Id. The ALJ is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians;" he need not rely on the opinion of "some super-evaluator, a single physician who gives the factfinder an overview of the entire case" in its entirety in assessing the claimant's residual functional capacity. See Evangelista, 826 F.2d at 144.

The ALJ proposed the first hypothetical to the VE that corresponded with the opinion of Dr. Manuelian. (AR 39-40, 307-314). The VE responded that this person could not perform Obijo's past work, but could perform light and sedentary levels of work. (AR 40-41). The ALJ then posed the same hypothetical, but added the restriction that the person would require unscheduled breaks in an eight hour day, that could total two or more hours and would be absent from work three to four days per month. (AR 41). The VE stated that no substantial gainful activity would be available for such an individual. (AR 42).

The ALJ's reliance on the first hypothetical was not error. See Morin v. Barnhart, No. 05-30129, 2006 U.S. Dist. LEXIS 32606, at *16 (D. Mass. May 19, 2006) ("It was well within the province of the ALJ to reject the additional component of his last hypothetical question."). "An administrative law judge often will ask several hypothetical questions, each containing different limitations. The ultimate decision is and must be based on the administrative law judge's evaluation of all of the evidence; it cannot be tied to the information included in any given hypothetical question." Pooler v. Barnhart, No. 03-179, 2004 U.S. Dist. LEXIS 16966, at *5-6 (D. Me. August 25, 2004). Further, the ALJ is "not required to accept or discuss vocational testimony based on other limitations not found to be supported by the substantial evidence." Santos v. Astrue, No. 10-40166, 2012 U.S. Dist. LEXIS 44624, at *27 (D. Mass. March 30, 2012); see also Porcher v. Barnhart, 394 F. Supp. 2d. 288, 299 n. 9 (D. Mass. 2005).

Here, the ALJ provided the vocational expert with the first hypothetical which reflected the medical and functional capacity findings contained in the record. The ALJ expressly relied on Dr. Manuelian's evaluation in his decision, and the first hypothetical is consistent both with that evaluation and the ALJ's RFC findings. The ALJ does not explain why he did not rely on the second hypothetical. However, that hypothetical is not supported by the record. Obijo has not pointed to any specific evidence in the record to support the limitations proposed in the second hypothetical. Rather, she relies on a generalized argument that her impairments would require such breaks. There is no evidence of record to support this argument. Indeed, both Dr. Manuelian and Dr. Goswami indicate that she could sit and stand "with normal breaks" for six hours in an eight hour day. (AR 271, 308). Accordingly, there is sufficient evidence to support the ALJ's reliance on the VE's response to the first hypothetical, and the ALJ did not err in his

determination.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the District Court GRANT the Commissioner's Motion to Affirm (Docket No. 23), and DENY Plaintiff's Motion for Order Reversing or Remanding the Commissioner's Decision (Docket No. 18).

## V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. <u>See</u> Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. <u>See</u> <u>Phinney v. Wentworth Douglas Hospital</u>,199 F.3d 1 (1st Cir. 1999); <u>Sunview Condo. Ass'n v. Flexel Int'l</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge